Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 28 2014, 10:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SCOTT KNIERIM**
The Law Office of Scott Knierim, LLC
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY DUNCAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1310-CR-456 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Stephanie Lemay-Lukin, Judge
Cause No. 32D05-1203-CM-307

**May 28, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Jeffrey Duncan ("Duncan") was convicted in Hendricks Superior Court of Class A misdemeanor operating a vehicle with a blood alcohol concentration ("BAC") equivalent to .15 and determined to be an habitual substance offender. The trial court sentenced Duncan to 365 days in the Hendricks County Jail and 365 days probation. Duncan raises two issues on appeal, which we restate as follows:

> I. Whether the evidence presented by the State is sufficient to support the trial court's determination that Duncan is an habitual substance offender, and
>
> II. Whether the trial court properly advised Duncan of the consequences of failing to timely request a jury trial.

We affirm.

### Facts and Procedural History

In the early morning hours of March 9, 2012, John Lee Parker ("Parker") was watching television in his home when he heard a vehicle pull into the driveway that Parker's home shared with two other houses. When Parker looked out a window of his home, he saw a black vehicle in the driveway. Parker and his wife watched as Duncan, who was one of their neighbors, exit the passenger's side of the vehicle. The vehicle departed and Duncan stumbled toward a nearby pole barn, then back to the driveway. The Parkers continued to watch Duncan for about an hour, during which time they saw Duncan talk to himself, shadowbox with himself, fall to the ground, stagger against the Parkers' fence and urinate in the driveway. Eventually, Duncan got into his truck, twice attempted to start the engine, revved the engine, accelerated, drove over a concrete parking block, crashed his truck into the Parkers' fence, and finally exited the truck and fled into his own residence.

2

The Parkers called the police and Hendricks County Sheriff's Deputies Kyle Schaefer ("Deputy Schaefer") and Jeffrey Hughes ("Deputy Hughes") arrived at the scene a few minutes later, at approximately 1:30 a.m. and 1:40 a.m., respectively. The deputies knocked on Duncan's door. When Duncan answered the door, the deputies observed that Duncan's speech was slurred; his eyes were glassy, unfocused, and bloodshot; his stance was unsteady; and he smelled of alcohol. Duncan told the deputies that he did not know how his truck had crashed into the Parkers' fence. However, the deputies located the keys to the truck in Duncan's pocket. Duncan admitted that he had been drinking that night at a local bar but claimed that he had not consumed any alcohol since his return home.

The deputies transported Duncan to the Hendricks County Jail where Deputy Hughes administered the horizontal gaze nystagmus and walk-and-turn field sobriety tests, both of which Duncan failed. Deputy Hughes also administered a chemical breath test. The results of the test indicated that Duncan had a BAC of .18.

On March 9, 2012, the State charged Duncan with Class A misdemeanor operating a vehicle while intoxicated endangering a person, Class A misdemeanor operating a vehicle with a BAC equivalent to .15, and being an habitual substance offender. An initial hearing was held the same day, at which the trial court set a bench trial and omnibus date for May 3, 2012. At the hearing, Duncan was advised of his rights via a video. The video stated, in relevant part:

> You have the Right to a public and speedy trial by jury. If you request a speedy trial, I will set your case for trial within 70 days from today's date. If you are charged with a felony, your case will automatically be set for a

jury trial.  If you are charged with a misdemeanor only, you must make a written request for a jury trial not later than 10 days before the trial date.

Tr. p. 5.

On August 31, 2012, a hearing was held via "video court" at which Duncan was again advised of his rights via a video.  The video stated, in relevant part:

You have the Right to a public and speedy trial by jury.  If you request a speedy trial, I will set your case for trial within 70 days from today's date.  If you are charged with a felony, your case will automatically be set for a jury trial.  If you are charged with a misdemeanor only, you must make a written request for a jury trial not later than 10 days before the trial date.

Tr. p. 18.

On November 28, 2012, the trial court held a hearing at which the following exchange occurred between defense counsel and the trial court:

Counsel: Your honor, I am the third attorney that's been on this case. I know it's been pending for a while.  Mr. Duncan has informed me that he wishes to request a Jury Trial.  Uh, I wanted to make the court . . .

Court: And it's far too late for that.

Counsel: Okay.

Court: You have to request that within ten (10) days of the omnibus date.  At your initial hearing sir, there was a video tape that informed you of that.  And that if you failed to do that you would uh, you waived your right to a jury trial.  So I won't be setting a jury trial in this case.  So, do you want me to set a bench trial, Ms. Sauer?

Counsel: Yes Judge…

Tr. pp. 27-28.

4

On October 7, 2013, the trial court held a bifurcated bench trial.[1]  The court found Duncan guilty of operating a vehicle with a BAC of .15 or more.  During the habitual substance offender phase, the State submitted four exhibits establishing Duncan's prior convictions, including several Bureau of Motor Vehicle photographs of Duncan, his social security number, his driver's license number, and his date of birth.  The trial court found Duncan to be an habitual substance offender.  The trial court ordered Duncan to serve an aggregate sentence of 730 days in the Hendricks County Jail, with 365 days suspended to probation.

Duncan now appeals.

## I. Habitual Offender Enhancement

Duncan first argues that the State's evidence during the habitual offender phase of the trial was insufficient to establish Duncan's identity.

Indiana Code section 35-50-2-10, the habitual substance offender statute, provides that:

> (b) The state may seek to have a person sentenced as an habitual substance offender for any substance by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated substance offense convictions.

> (c) After a person has been convicted and sentenced for a substance offense committed after sentencing for a prior unrelated substance offense conviction, the person has accumulated two (2) prior unrelated substance offense convictions.

---

[1]  The bench trial was continued several times for various reasons.

Thus, to sustain a sentence under the habitual offender statute, the State must demonstrate that the defendant was twice convicted and twice sentenced. Devore v. State, 650 N.E.2d 37, 40 (Ind. Ct. App. 1995).

Duncan argues that the State provided insufficient evidence as to Duncan's two prior offenses because it produced no witnesses to testify about his offenses, but, instead, offered only documentation. He asserts that the State "did not, at any point in this portion of the trial identify Jeffrey Duncan, [or] provide one witness to show how the defendant would have been connected as the same person in the documentation submitted to the Court." Appellant's Br. at 5.

The record shows that in 2000, Duncan was convicted of operating a vehicle while intoxicated and in 2004, he was convicted of operating a vehicle while intoxicated with a prior. To prove the prior two convictions, the State offered into evidence nine of Duncan's most recent driver's license photographs from the Bureau of Motor Vehicles, five of which depicted Duncan with a distinctive eyebrow ring over his left eye. The State also submitted documentation noting Duncan's birth date, social security number, driver's license number, and physical characteristics, including his gender, height, weight, hair, and eye color. The trial court viewed the evidence submitted by the State, observed Duncan in person, and determined that the "Jeffrey Duncan" present in the courtroom was the same "Jeffrey Duncan" depicted in the photographs and described in the State's documents. Duncan's request that we conclude otherwise is merely a request to reweigh the evidence, which we will not do. See Meredith v. State, 503 N.E.2d 880, 883 (Ind. 1987) ("since the State introduced properly authenticated commitment papers of one

6

'Frederick Meredith' which contained both photographs, and a description of his physical characteristics, including weight, height, age, hair and eye color, complexion, and build, the jury's conclusion that Appellant was the same 'Frederick Meredith' who had accumulated these two prior felony conviction was justified. To hold otherwise would be to reweigh the evidence, which we cannot do." internal citations omitted).

Under these facts and circumstances, we conclude there was sufficient evidence to support Duncan's habitual offender enhancement.

## II. Waiver of Jury Trial

Duncan next argues that he was unlawfully denied the right to a jury trial. The right to a jury trial is guaranteed by the Indiana and United States Constitutions. Young v. State, 973 N.E.2d 643, 645 (Ind. Ct. App. 2012). In Indiana, the right to a jury trial is further guaranteed by Indiana Code section 35-37-1-2, which provides that all criminal trials be tried to a jury unless there is a joint waiver by the defendant, the prosecutor, and the trial judge.

However, in misdemeanor cases, the right to a jury trial is not self-executing but is controlled by Indiana Rule of Criminal Procedure 22 ("Criminal Rule 22"). Liquori v. State, 544 N.E.2d 199, 201 (Ind. Ct. App. 1989). Criminal Rule 22 provides, in relevant part:

> A defendant charged with a misdemeanor may demand a trial by jury by filing a written demand therefor no later than ten (10) days before his first scheduled trial date. The failure of a defendant to demand a trial by jury as required by this rule shall constitute a waiver by his of trial by jury unless the defendant has not had at least fifteen (15) days advanced notice of his scheduled trial date and of the consequences of his failure to demand a trial by jury.

7

Thus, when charged with a misdemeanor, a defendant can waive his right to a jury trial by failing to make a timely demand for trial by jury. Belazi v. State, 525 N.E.2d 351, 352 (Ind. Ct. App. 1988), trans. denied. Furthermore, although a defendant must be advised of his constitutional right to a jury trial, an advisement of his rights and the consequences of failure to make a timely demand is sufficient to act as a waiver of said right. Combs v. State, 533 N.E.2d 1241, 1242 (Ind. Ct. App. 1989).

Duncan claims that the two advisements he received "did not include language that advised the defendant the consequences of not filing a written waiver within ten (10) days. There was no mention of it constituting a waiver of his jury trial, nor any language stating that he would then never be allowed to have a Jury Trial." Appellant's Br. at 7.

Duncan's claim is without merit. The trial court advised Duncan of his right to a jury trial twice, on March 9, 2012 and again on November 28, 2012. Both times, the trial court notified Duncan that he "must make a written request for a jury trial not later than 10 days before the trial date." Tr. pp. 5, 18. In its advisement, the trial court also distinguished between a felony case, which is automatically set for jury trial, and a misdemeanor case, where a written request for jury trial must be made. Implicit in these advisements is the principle that if Duncan failed to request a jury trial no later than ten days before trial, he waived the right. And, importantly, Duncan does not claim that he was misled by the advisement or that he believed that he would receive a jury trial. Therefore, we conclude that the advisements given Duncan were sufficient to notify him of the consequences of his failure to timely request a jury trial. See Liquori v. State, 544

8

N.E.2d 199 (Ind. Ct. App. 1989) (holding that trial judge's statement to defendant that defendant's misdemeanor case was not currently set for jury trial and that in order to secure his right to jury trial, he had to request it within certain time period was sufficient to notify defendant that consequence of his failure to timely file request for jury trial was bench trial).

## Conclusion

For all of these reasons, we conclude that the State presented sufficient evidence to support Duncan's habitual offender enhancement and that the advisements the trial court gave Duncan were sufficient to notify him of the consequences of his failure to timely request a jury trial.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.